**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SERGIO DEWITT,

      Petitioner,

-vs-                                Case No.  8:03-CV-856-T-30MAP

JAMES McDONOUGH,[1]

      Respondent.

_____/

## ORDER

Petitioner, a State of Florida inmate, initiated this proceeding *pro se* by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 1997 convictions for drug-related offenses entered in the Sixth Judicial Circuit Court, Pinellas County, Florida (Dkt. 1). Respondent has filed a response to the petition (Dkt. 22), and Petitioner has filed a reply thereto (Dkt. 26). The matter is now before the Court for consideration of the merits of the petition. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a).

### Background

Petitioner was charged by Information on April 25, 1995, with trafficking in cocaine and conspiracy to traffic in cocaine (Dkt. 22, Ex. 25, Vol. I at R. 5).  Represented by retained counsel, Petitioner proceeded to a trial by jury on January 21, 1997 (Dkt. 22, Ex. 25, Vols. I-IV). Petitioner was found guilty as charged, and on February 17, 1997, Petitioner was sentenced to a minimum mandatory sentence of 15 years incarceration on each count,

---

[1]James McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

with the sentences to run concurrently, and assessed a fine of $250,000.00 (Dkt. 22, Ex. 25, Vol. I at R. 80-86).

Petitioner raised the following issues on appeal:

1. Whether the trial court erred in denying [Petitioner's] motion to suppress a confession or admissions illegally obtained;

2. Whether the trial court erred in admitting the alleged co-conspirator's hearsay statements where there was no independent evidence to prove a conspiracy, and each member's participation in it, before admitting coconspirator hearsay statements; and

3. Whether the trial court erred in denying [Petitioner's] motions for judgment of acquittal where the state failed to present competent prima facie evidence sufficient to support the conviction.

Dkt. 22, Ex. 2. On April 30, 1999, the state district court affirmed Petitioner's convictions and sentences (Dkt. 22, Ex. 5). *See Dewitt v. State*, 733 So.2d 523 (Fla. 2d DCA 1999). Several unsuccessful applications for state post-conviction relief followed over the next four years (Dkt. 22, Exs. 7; 8; and 20). *Dewitt v. State*, 853 So.2d 417 (Fla. 2d DCA 2003); *Dewitt v. State*, 835 So.2d 1122 (Fla. 2d DCA 2002); *Dewitt v. State*, 827 So.2d 988 (Fla. 2d DCA 2002).

On May 2, 2003, Petitioner filed a petition for federal habeas relief asserting 28 claims for relief. Respondent acknowledges that the petition is timely but argues that Petitioner has failed to establish that he meets the criteria for relief under § 2254(d)-(e). Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, this Court agrees with Respondent.

## Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

### Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. As set forth above, Petitioner raises 3 claims of trial court

error, 23 claims of ineffective assistance of counsel at trial, and 2 claims of ineffective assistance of counsel on appeal (Dkt. 1).

**Procedural Default**

Having reviewed the relevant portions of the record and considered the arguments of the parties, the Court concludes that some of Petitioner's grounds for relief should be denied for procedural reasons. The defective grounds identified below are not properly before the Court for review because the ground was not presented as a federal question, was never presented to the state court, or the ground was abandoned on appeal.

Grounds Two and Three were raised by Petitioner on direct appeal (Dkt. 22, Ex. 2 at 11-24; Ex. 4 at 5-8). In Ground Two, Petitioner complains that the trial court erred in admitting his co-conspirator's hearsay statements. In Ground Three he asserts that the trial court erred in denying his motion for judgment of acquittal contending that the State failed to establish a prima facie case of conspiracy to traffic in cocaine over 400 grams. A review of the briefs Petitioner filed on direct appeal confirms that the issues raised in Grounds Two and Three were raised in state law terms only, *see* Dkt. 22, Exs. 2 and 4. The federal dimensions of these claims are, thus, not properly exhausted in state court. *See* 28 U.S.C. § 2254(b).

In Ground Four of his petition, Petitioner alleges, as he did in his state habeas corpus petition, that the absence of the full transcript of the voir dire proceedings precluded a meaningful review of his case on direct appeal. Petitioner fails to present any factual support for this claim in his petition or state how the lack of a transcript of this portion of the trial prejudiced him.

Likewise, in his state habeas petition, Petitioner failed to present any factual support for this claim. In the reply he filed in the instant case, Petitioner asserts that had appellate

counsel requested the transcripts of the voir dire proceedings, he would have discovered that Petitioner was absent from bench conferences when juror challenges were exercised and that he was absent from the courtroom when the jury was sworn.  This argument was not, however, presented to the trial court.[2]  *See* Dkt. 19 at 3-5.

Federal habeas courts require that a petitioner present his claims to the trial court "such that a reasonable reader would understand each claim's particular legal basis and specific *factual* foundation." *McNair v. Campbell*, 416 F.3d at 1302 (quoting *Kelley*, 377 F.3d at 1344-45)) (emphasis added).

Finally, in Ground Eleven, Petitioner contends that trial counsel was ineffective in failing to file a Notice of Expiration of Time for Speedy Trial.[3] Petitioner was arrested on April 5, 1995.  Absent a finding that the complexity of the case warranted extending the speedy trial period, a waiver by Petitioner, or an order by the trial court granting a continuance at the request of Petitioner or the State due to "exceptional circumstances," Petitioner's speedy trial period expired on September 27, 1995. Petitioner contends that neither he nor trial counsel consented to a continuance or waived speedy trial. The trial court concluded otherwise, finding that the record reflects that Petitioner's right to a speedy

---

[2]In his Rule 3.850 motion, Petitioner asserted that *trial* counsel was ineffective in failing to inform him of his right to be present at bench conferences, *see* Dkt. 22, Ex. 7 at R. 16; Ex. 8 at R. 62, but there was no mention of *appellate* counsel being ineffective for failing to raise the issue of Petitioner's absence from the bench conferences.

[3]Under Florida's procedural rules, a felony must be tried within 175 days of arrest if no speedy trial is demanded. Fla. R.Crim. P. 3.191(a). If a demand for a speedy trial is made, the time shrinks to a maximum of 60 days from the demand, and can be as short as 5 days. Fla. R. Crim. P. 3 .191(b). Thus, when a speedy trial demand is made, the defendant asserts that he is ready and willing to be tried with as little as 5-days' notice. Fla. R. Crim. P. 3.191(g). If the defendant is not brought to trial within the 60 day period, he can file a "Notice of Expiration of Speedy Trial Time," and the court then has 10 days to commence the trial. If that is not done, the court must hold a hearing to determine whether there are legal justifications for the delay, and if there are none, the defendant must be discharged. Rule 3.191(p).

trial was waived on June 12, 1995, when trial counsel made his first appearance on Petitioner's behalf. *See* Dkt. 25, Ex. 9, Ex. B attached thereto.

When Petitioner filed his appeal of the trial court's denial of his Rule 3.850 motion, he did not appeal this issue. Instead, Petitioner asserted on appeal that trial counsel was ineffective for not advising Petitioner that when he requested that court-appointed counsel withdraw, he also waived his right to a speedy trial, *see* Dkt. 22, Ex. 14 at 9.  Thus, Petitioner abandoned the claim raised in the Rule 3.850 motion. Because Petitioner abandoned the claim on appeal, it is now procedurally barred from review in state court. *See State v. Mitchell*, 719 So.2d 1245, 1247 (Fla. 1st DCA 1997), *rev. denied*, 729 So.2d 393 (Fla. 1999).

The exhaustion of the federal dimension of a habeas claim is a statutory requirement that the State did not expressly waive in this case. See 28 U.S.C. 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). *See also McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that the district court erred in finding that because the state failed to argue the procedural bar, the bar was waived and proceeded to consider the merits of the petitioner's claim).

Title 28 U.S.C. § 2254(b) requires the exhaustion of all state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal

claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

The reverse of this statement is likewise true, that is, it is not enough to present the federal claim before the state courts but not the facts necessary to support the claim. *See, e.g., Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court."). "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845); *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal of its denial" (citation omitted)).[4]

The failure to properly exhaust state court remedies for Grounds Two, Three, Four, and Eleven when remedies were available results in a procedural default of these claims. *O'Sullivan*, 526 U.S. at 847. As state remedies are no longer available, Petitioner must show either "cause and prejudice" or "manifest injustice" to overcome this procedural default. Petitioner has not presented any argument to overcome his failure to have presented these specific grounds to the state courts. Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court

---

[4]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

to address the merits of Grounds Two, Three, Four, and Eleven.  *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

**Merits**

Because a state court initially considered the remaining claims raised in the petition, § 2254(d) governs the review of those claims.  *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001). While these are properly exhausted, the Court concludes, for reasons discussed below, that the claims lack merit.

 **Ground One**

Petitioner asserts that the trial court erred in denying the motion to suppress statements he made without having knowingly and intelligently waived his rights under *Miranda*.[5] Because this issue was raised on direct appeal and rejected by the state court, two principal standards control this Court's review of the claim.  First, under § 2254(e), the state court's determinations of factual issues are presumed correct unless the petitioner presents clear and convincing evidence that the state court determinations were erroneous. Second, under § 2254(d), claims decided on the merits by the state court cannot be the basis for habeas relief unless the state court ruling was contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts.

Petitioner complains that the detectives threatened to arrest his girlfriend and place his child in an orphanage if he did not cooperate with them in their investigation.  According to Petitioner, acting under duress, he fabricated a story to protect his family, telling the

---

[5]Established in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment right to counsel is intended to operate prophylactically  to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings. *Id.* at 478-79.

detectives that he could assist them in the investigation by identifying a Miami drug supplier.

The voluntariness inquiry turns on whether the confession was the product of a free and deliberate choice rather than intimidation, coercion or deception, *see Moran v. Burbine*, 475 U.S. 412, 421 (1986), and focuses on police overreaching, *see Colorado v. Connelly*, 479 U.S. 157, 170 (1986) (a defendant's perception of coercion, which is solely caused by his unique mental status, is not a factor). Both of these inquiries are based upon the totality of the circumstances. See *Moran*, 475 U.S. at 421.

During the suppression hearing, Petitioner failed to provide a basis for the trial court to find that the detectives' conduct during the interrogation was in any way coercive. Further, no police impropriety is apparent in the record.

Detective Viera was called to the scene of the arrest to translate because Petitioner informed Detective Squitieri that he did not speak English. Detective Viera testified that when Petitioner requested an attorney, all questioning stopped. Detective Viera advised Petitioner of his rights under *Miranda* in both English and Spanish. While being transported to the police station, Petitioner began speaking with Detective Viera in Spanish.

Petitioner was read his *Miranda* rights in English and Spanish a second time when they arrived at the police station. Testimony established that Petitioner accompanied the detectives from the police station to his home to await a telephone call from the "Miami drug supplier." While there, Petitioner requested an attorney. He was allowed to telephone "a friend" who agreed to arrange for him to speak with an attorney.

The detectives escorted Petitioner back to the police station, where Attorney Douglas Prior met with him. Attorney Prior then informed the detectives that Petitioner wanted to cooperate with them in their investigation (Dkt. 22, Ex. 1 at 134). Petitioner was

again read his *Miranda* rights, following which Petitioner signed a waiver form. There was

no testimony presented in support of Petitioner's assertion that the detectives threatened

him by telling him that if he did not cooperate with the detectives, Petitioner's girlfriend

would be arrested and his child taken away from him. Detective Viera testified that

Petitioner had a good grasp of English.  Detective Viera further testified that Petitioner

appeared to understand his rights under *Miranda* and signed the consent form in the

detectives' presence, *see* Dkt. 22, Ex. 1 at R. 132; 136; 149.  Petitioner did not invoke his

right to remain silent or request that his attorney be present after signing the consent form.

Petitioner does not deny that he was read his *Miranda* rights or assert that he did not sign

the consent form.

    The trial court found that there was no *Miranda* violation and denied the motion to

suppress Petitioner's statements, finding:

> The court is going to find that based upon the unrebutted testimony that was
> present [sic] here today and the totality of all the circumstances that there
> was a voluntary waiver of the defendant's rights which was knowingly,
> intelligently and knowledgeably made, although, the defendant requested to,
> I will take two issues, the defendant requested to speak with an attorney,
> although, the defendant did request to speak with an attorney after those
> requests.

> It was the defendant, not law enforcement that initiated all conversations
> based upon that the *Stein*[6] case (sic) appears to be on point. The second
> issue that the defendant's primary language is Spanish, although, that might
> be true. It does appear that he is conversationally bilingual. It appears that
> the only conversations that really took place in Spanish were those
> conversations regarding his *Miranda* warnings after he indicated that he
> didn't understand English.

> All other conversations appeared to take place in English. Only one officer
> spoke Spanish and he was not present during the entire time he was called

---

[6] *Stein v. State*, 632 So.2d 1361, 1364 (Fla. 1994) (motion to suppress was properly denied where the defendant voluntarily initiated continued communication with investigators after he invoked his right to counsel) (citing *Minnick v. Mississippi*, 498 U.S. 146 (1990); *Edwards v. Arizona*, 451 U.S. 477 (1981)).

in originally just to advise the defendant of his rights in Spanish which he appeared according to that officer to understand, that all the rest of the conversation took place that was testified to for multiple hours. All that conversation was done in English. Accordingly for the foregoing reasons, the court will deny the defendant's motion.

Dkt. 22, Ex. 1 at R.186 (footnote added).

In the written order denying the motion to suppress, the trial court made the following findings of fact:

1.  Defendant . . . was arrested by the Pinellas County Sheriff's Office on April 5, 1995.

2.  The Defendant was read his *Miranda* rights in English and Spanish.

3.  The Defendant invoked his *Miranda* rights by asking for an attorney.

4.  On the way to the police station the Defendant initiated conversation with law enforcement officers.

5.  Upon arrival at the police station the Defendant was again read his *Miranda* warnings in English and Spanish.

6.  The Defendant indicated on the *Miranda* waiver form he understood his rights and agreed to speak to the police officers without an attorney present, based upon his initialing of the waiver form.

7.  The Court finds the Defendant then made statements to the police which were freely and voluntarily given after the Defendant had knowingly and intelligently waived his Miranda rights.

Dkt. 22, Ex. 25, Vol. I at R. 48-49.

Implicit in the trial court's findings is the rejection of Petitioner's argument that he was coerced into confessing his involvement in drug trafficking.[7] Petitioner has failed to rebut by clear and convincing evidence the presumption of correctness accorded the trial

---

[7]To the extent that Petitioner's assertion in Ground Seven that he was not present in the courtroom during a portion of the hearing on the motion to suppress may be read to assert that he was denied a full and fair chance to litigate this claim in the trial court, for reasons discussed below, this argument is unavailing to Petitioner's cause.

court's findings of fact. *See* 28 U.S.C. § 2254(e)(1).   Given the credibility assessment required to find a voluntary waiver in this case, and the deference due state-court factual findings under AEDPA, it cannot be said that the trial court's resolution of this claim was contrary to or an unreasonable application of Supreme Court law.   Ground One does not warrant habeas corpus relief.

**Ineffective Assistance of Counsel**

In the remaining grounds raised in the petition, Petitioner asserts that he was denied effective assistance of counsel. Petitioner was represented by Attorney Adrian R. Castro at trial and on direct appeal.

To establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Eleventh Circuit has held that "[w]hen applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998).

The *Strickland* standard of review applies to ineffective assistance of appellate counsel claims. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. To the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing

on one central issue if possible, or at most on a few key issues." *Id.* at 751-52. When evaluating claims of ineffective assistance of appellate counsel, the Florida courts apply a standard similar to that enunciated in *Strickland.* "The '[p]etitioner must show (1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance and (2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result.'" *Smith v. State*, 931 So.2d 790, 805 (Fla. 2006).

**Appellate Counsel**

On July 11, 2000, Petitioner filed a state petition for habeas corpus alleging that appellate attorney was ineffective in failing to (1) request a full transcript of voir dire, and (2) assert that the trial court erred when it rejected trial counsel's request that the jury be instructed on lesser included offenses (Dkt. 22, Ex. 20).  When raised in Petitioner's application for state habeas relief, these issues were summarily rejected (Dkt. 22, Ex. 24). As stated *supra*, even though the state court entered its decision rejecting Petitioner's request for habeas relief without written opinion, as Respondent correctly argues, the Eleventh Circuit has held that the decision is entitled to the same deference as if the appellate court had entered written findings to support its decision.  *See Wright v. Sec. of Dept. of Corr.*, 278 F.3d 1245  (11th Cir. Jan. 22, 2002), *cert. denied*, 538 U.S. 906 (2003).

**Ground Five**

Petitioner contends that appellate counsel was ineffective in failing to argue that the trial court erred in denying trial counsel's request that the jury be given an instruction on the lesser included offenses of conspiracy to deliver cocaine and conspiracy to sell cocaine. Section §2254(d) precludes relief in this case. This issue was adjudicated on the merits by

the state appellate court, and Petitioner has failed to demonstrate that the adjudication of the issue resulted in a decision that was contrary to, or involved an unreasonable application of the Supreme Court's holding in *Strickland* or shown that the adjudication of the issue resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The record reflects that Petitioner's appellate counsel raised three issues on direct appeal. Appellate counsel's initial brief was comprehensive, thorough, and well-argued. Certainly, the record clearly evinces the thoroughness and reasonableness of appellate counsel's work. *Cf. Thomas v. Scully*, 854 F.Supp. 944 (E.D.N.Y. 1994) (the appellate brief submitted by counsel clearly showed the thoroughness of counsel's work). The fact that another issue might have succeeded in the state appellate court does not lead automatically to the conclusion that Petitioner was deprived of a constitutional right when his lawyer failed to assert such a claim. It is well-settled that appellate counsel who files a merits brief need not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. at 754. Appellate counsel must be allowed to exercise his reasonable professional judgment in selecting those issues most promising for review, and "[a] brief that raises every colorable issue runs the risk of burying good arguments. . . ." *Id.* at 753.

Under the circumstances of this case, appellate counsel's decision not to pursue this issue was consistent with reasonable appellate strategy that, under the deferential standard of review articulated in *Strickland*, should not be second-guessed through hindsight. *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir.  2001) (quoting *Waters v. Thomas,* 46 F.3d 1506, 1514 (11th Cir. 1995) (*en banc*)).

In light of the discretion accorded appellate counsel in selecting those issues most promising for review, the Court concludes Petitioner has not demonstrated that he was inadequately or ineffectively represented on direct appeal. Hence, this claim must fail.

## Trial Counsel

In the remaining 23 grounds for relief presented in the petition, Petitioner raises the ineffective assistance of counsel claims he raised in his Rule 3.850 motion. Summarily rejecting 19 of the claims, the state post-conviction court granted an evidentiary hearing on the 4 remaining claims. Following the evidentiary hearing, the state post-conviction court applied the *Strickland* standard in denying Petitioner's Rule 3.850 motion.  Since the trial court applied the correct standard of review for ineffective assistance of counsel claims, to be entitled to relief under § 2254, Petitioner must establish that the application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lacked merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

## Ground Six

Petitioner alleges that trial counsel was ineffective in failing to adequately investigate the circumstances surrounding his arrest.   Testimony by the investigating officers established that the Pinellas County Sheriff's Office Narcotics Bureau initiated an undercover operation focusing on Kenneth Mleczko. After being arrested with a substantial quantity of cocaine on April 5, 1995, Mleczko proceeded to assist police by identifying Petitioner as the source of the cocaine and setting up a meeting with Petitioner to pay him the $12,000 Mleczko had just obtained from the sale of cocaine to an undercover detective.

Monitoring Mleczko, Detective Squitieri watched him get into a car with Petitioner and drive down the street. Mleczko told Petitioner that he was  stopping at a fast-food restaurant to use the restroom.  While Petitioner waited in the car for Mleczko to return, law enforcement officers arrested him. The arrest was based on the information provided by Mleczko.

Asserting that he was not exhibiting any illegal behavior, Petitioner contends that the police, acting on information from a "drug trafficker" turned informant, made a warrantless arrest without probable cause. Petitioner argues that trial counsel was ineffective for failing to file a motion to dismiss on the ground that his arrest was made in violation of his Fourth Amendment rights. The trial court rejected this claim, finding that Petitioner failed to show that he was prejudiced by trial counsel's performance (Dkt. 22, Ex. 9 at 2).

As the trial court noted in its order denying this claim, given the circumstances surrounding Petitioner's arrest, trial counsel's failure to move to dismiss the charges for lack of probable cause because the information the police relied on in placing him under surveillance was provided by a known drug dealer would have had little, if any, possibility of success. Thus, even if trial counsel's failure to file a motion to dismiss the charges against Petitioner on this ground was unreasonable under prevailing professional norms, Petitioner has failed to demonstrate that he was prejudiced thereby. *See Sims v. Singletary*, 155 F.3d 1297 (11th Cir. 1998) ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").

Petitioner has failed to demonstrate that the trial court's rejection of this claim contradicts or is an unreasonable application of clearly established Supreme Court law. 28 U.S.C. 2254(d). The Court concludes that Petitioner has not established that he is entitled to federal habeas relief on Ground Six.

**Grounds Seven and Twenty-six**

Because these claims relate to trial counsel's performance during the hearing on the motion to suppress statements Petitioner made to law enforcement officers, they will be discussed together.  In Ground Seven, Petitioner contends trial counsel was ineffective in failing to object to Petitioner's absence at the beginning of the suppression hearing because testimony presented before his arrival in the courtroom may have assisted him in deciding whether to take the stand and refute the detectives' testimony. Yet, in Ground Twenty-six, Petitioner alleges that trial counsel was ineffective for refusing his request that he be allowed to testify during the suppression hearing "to defend himself against the allegations made by [the] detectives" (Dkt. 2 at 23). Given the assertions presented in Ground Twenty-six, Petitioner cannot demonstrate that he was prejudiced by his absence from the courtroom at the beginning of the hearing.

Having heard testimony on Petitioner's complaint that trial counsel refused to allow him to testify during the suppression hearing, the trial court denied the claim based on the following findings:

> At the evidentiary hearing, Defendant testified that he desired to testify at the suppression hearing to refute the officers' testimony. Defendant advised counsel of his desire to testify, but counsel informed him now would not be a good time to testify and he should wait until trial. Defendant did not pursue this issue and he did not testify at the hearing.
>
> Mr. Castro testified he did not recall whether Defendant wanted to testify at the suppression hearing,  but if Defendant had requested to testify counsel would have advised him not to testify now and to wait until trial. Counsel stated this was a tactical reason because if his client's testimony [was] adverse to his interests, then that testimony could be used for impeachment in later proceedings. Mr. Castro did testify that if clients insist on testifying at suppression hearings, again he advises them it would be in their best interests not to take the stand, but he permits them to testify.
>
> The Court finds that defense counsel made a sound, tactical decision to advise Defendant not to testify at the suppression hearing because the

testimony could be used to impeach him at a later proceeding. *See State v. Spiegel*, 710 So.2d 13 (Fla. 3d DCA 1998). Defendant has not shown that counsel's performance was deficient and this claim is denied.

Dkt. 22, Ex. 13 at 5-6).

The record supports the trial court's finding regarding trial counsel's performance during the suppression hearing.  Petitioner testified during the Rule 3.850 hearing that he told trial counsel that he wanted to testify during the suppression hearing.  Petitioner further testified that trial counsel advised him that he should not testify until he went to trial. According to Petitioner, he accepted trial counsel's advice because that was why he was hired.  Having acquiesced to trial counsel's strategy, Petitioner cannot prevail on this claim.

Petitioner has not shown  that the trial court's adjudication of these claims was contrary to or represents an unreasonable application of the *Strickland* standard.  The claims will, therefore, be denied.

**Ground Eight**

In Ground Eight, Petitioner acknowledges that trial counsel argued a motion to suppress his confession, but alleges that trial counsel was ineffective in failing to adequately investigate the circumstances surrounding his confession. During interrogation, Detective Squitieri showed Petitioner a 16-oz bag of cocaine that Petitioner identified as a having been delivered to Mleczko by him. Petitioner's complaint here is that this confession was not specifically referenced during the suppression hearing.

The state post-conviction court summarily rejected this claim as facially insufficient, stating:

> The record indicates that counsel did in fact argue a motion to suppress Defendant's confession. A review of the transcript indicates that counsel approached the motion from the perspective that Defendant could not have voluntarily waived his rights because of a language barrier. The Court listened to testimony and ruled that Defendant did have a conversational

understanding of English and was additionally made aware of his rights by a Spanish-speaking officer. The Court found that Defendant's statements to police were voluntarily made.

Although counsel did argue a motion to suppress Defendant's confession, Defendant appears to assert that counsel was ineffective for not re-arguing a motion to suppress during trial. Defendant's allegations in ground three are mere factual recitations and conclusions and don't state how Defendant was prejudiced. Defendant's claim . . . is facially insufficient.  This claim is denied.

Dkt. 22, Ex. 9 at 3. The trial court's finding accurately reflects the record.

The record reflects that trial counsel presented a thorough, well-reasoned legal argument in support of the motion to suppress all statements Petitioner made after he was taken into custody. This Court is satisfied that trial counsel's performance in this regard was not deficient under prevailing professional norms. *Strickland*, 466 U.S. at 688. Further, the trial court's finding that Petitioner's claim was facially insufficient to support an ineffective assistance of counsel claim is not unreasonable. *See Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). *See also Hannon v. State*, 2006 WL 2507438, *19 (Fla. 2006) ("The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden.").

The trial court's rejection of this claim is not contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts.  *See* 28 U.S.C. § 2254(d).  Ground Eight does not, therefore, warrant habeas corpus relief.

**Ground Nine**

Petitioner contends trial counsel was ineffective in failing to investigate and interview Attorney Prior, with whom Petitioner spoke at the police station shortly after his arrest. Petitioner argues that Attorney Prior was a "material witness" in the case because he could

have refuted testimony by the detectives that Petitioner stated that he was willing to cooperate with them.[8]  In rejecting this claim, the trial court found as follows:

> After evaluating the testimony presented, especially Defendant's testimony, the Court finds that Defendant's desire, or lack thereof, to cooperate with police was not discussed with his first attorney. In their brief meeting, it is evident that communication problems prevented them from having a meaningful dialogue. It is likely that during this short encounter other issues were discussed, such as the charges pending, bond, and facts of the offense. Furthermore, Mr. Castro's testimony is credible when he states that Defendant's cooperation was not an issue at trial, and, thus, there would be no reason to call Mr. Prior as a witness. The Court finds that Defendant has not shown counsel's performance was deficient or that he suffered prejudice. Therefore, this claim is denied.

Dkt. 22, Ex. 13 at 2-3.

The transcript of the Rule 3.850 evidentiary hearing supports the trial court's findings. Having had the benefit of hearing testimony from trial counsel and Petitioner and an opportunity to observe their demeanor on the witness stand, the trial court determined that trial counsel was the more credible witness, concluding that because cooperation was not an issue in the trial, trial counsel was not ineffective in failing to call Attorney Prior as a witness.[9]

Determinations of witness credibility are best made by the trial court judge, who can assess the demeanor and candor of the witnesses. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998) (citing *Smith v.*

---

[8]During a bench conference held when the hearing on the motion to suppress commenced, the State informed the trial court that Attorney Prior was present and available to testify on the State's behalf contingent on the trial court addressing the issue of attorney/client privilege before he was called as a witness.  The State advised the trial court that Attorney Prior was prepared to testify that he and Petitioner spoke in English and that Petitioner appeared to understand what was being said.  The trial court informed the State that if it determined that Attorney Prior's testimony was required, the issue would be addressed at that time.  *See* Dkt. 22, Ex. 1 at R. 121.  Attorney Prior did not testify at the hearing.

[9]Under Florida law, trial counsel's failure to call a witness constitutes ineffective assistance of counsel only if the witness may have been able to cast doubt on the defendant's guilt. *See Pace v. State,* 750 So.2d 57 (Fla. 2d DCA 1999); *Marrow v. State*, 715 So. 2d 1075, 1076 (Fla. 1st DCA 1998).

*Kemp*, 715 F.2d 1459, 1465 (11th Cir.) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."), *cert. denied*, 464 U.S. 1003 (1983)); *Porter v. State*, 788 So.2d 917, 923 (Fla. 2001) (recognizing the trial court's "superior vantage point in assessing the credibility of witnesses and in making findings of fact").

The performance prong of *Strickland* focuses on whether counsel's performance was reasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688; *Jones v. State*, 845 So.2d 55, 65 (Fla. 2003). In evaluating counsel's performance, a court should presume effectiveness and avoid second guessing with the benefit of hindsight. *Strickland*, 466 U.S. at 689; *see also White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992), *cert. denied*, 514 U.S. 1131 (1995); *Cherry v. State*, 659 So.2d 1069, 1073 (Fla. 1995). In the present case, Petitioner has failed to advance a persuasive argument that trial counsel's decision not to call Attorney Prior to testify was unreasonable or that this decision can be construed as conduct outside the wide range of professional representation.

Petitioner has failed to overcome the strong presumption accorded the trial court's factual findings, *see* 28 U.S.C. 2254(e)(1), or demonstrate that trial counsel failed to exercise reasonable professional judgment. *See Grayson v. Thompson*, 257 F.3d 1194 1218 (11th Cir.2001).  A state prisoner seeking habeas relief in a federal court carries the burden of establishing that the trial court's resolution of his claim was contrary to, or an unreasonable application, of federal law. Petitioner has not met this burden. The Court finds, therefore, that Petitioner is not entitled to the relief he seeks on this claim.

**Ground Ten**

In Ground Ten,  Petitioner alleges that trial counsel was ineffective in failing to "notify" the trial court that it was required to conduct a hearing without the jury present to

determine whether his custodial statements were voluntarily made.[10] The trial court denied this claim without a hearing, noting that a determination that Petitioner's statements were voluntary had already been made during the suppression hearing.

As discussed above, the trial court found that Petitioner "knowingly, intelligently[,] and knowledgeably" waived his rights under *Miranda* after hearing the testimony of Detectives Viera and Squitieri during the suppression hearing, *see* Dkt. 22, Ex. 025, Vol. I at R.186. Petitioner has provided no basis for concluding that this finding was made in error. Thus, as the trial court found in rejecting this claim in the Rule 3.850 proceedings, there was no need for a further hearing on the matter.

Having failed to make the necessary showing under § 2254, Petitioner has not demonstrated that he is entitled to relief on Ground Ten.

---

[10]In support of this claim, Petitioner contends that Detective Viera testified that he read Petitioner his *Miranda* rights in Spanish "about thirty (30) times," and trial counsel was ineffective for not requiring the State to produce "30 *Miranda* forms signed by" him. Petitioner further argues that trial counsel was ineffective for not requiring that the State explain "how the only *Miranda*[] form have [sic] the date on [it] when Detective Squitieri testify [sic] that Viera told him that he did not put a date on [the] *Miranda*[] form (Dkt. 2 at 10). Petitioner misstates the record. During argument on the motion to suppress, the State commented that Detective Viera had "read *Miranda* warnings to at least thirty people in his opinion in Spanish if not more" (Dkt. 25, Ex. 1 at R. 176). Moreover, there was no testimony presented indicating that there was an "alteration" to the *Miranda* form. The following testimony was, however, given by Detective Squitieri:

> Q:     . . . . Did you at any time instruct Detective Viera to find out how much education [Petitioner] had?
>
> A:     I may have done that.
>
> Q:     What was the information that you received?
>
> A:     I don't recall.  The reason I would have done that was to make sure that [Petitioner] could understand the consent of his rights.  I believe he told me, Viera told me that [Petitioner] *didn't put a date on it*, but he said he could understand, I mean, as far as grade, I don't think [Petitioner] understood what we were asking him.

Dkt. 22, Ex. 1 at 173 (emphasis added).  Petitioner's misrepresentations of the record are of no consequence to the resolution of the claims presented in his petition.

**Ground Twelve**

In Ground Twelve, Petitioner contends trial counsel was ineffective in failing to inform him of his right to be present at "bench conference[s] during which matters critical to the defense of the case were discussed [and]  juror challenges were exercised [and] ruled on[,] and [trial counsel] failed to object to [Petitioner's] absence from these conferences" (Dkt. 2 at 11). The trial court rejected this claim, determining that, under Florida law, a defendant does not have the right to be present at bench conferences involving purely legal matters. *See Hudson v. State*, 708 So.2d 256 (Fla. 1998). The trial court further found that Petitioner's allegation is facially insufficient, stating:

> Defendant cites case law and makes conclusive statements but fails to allege with any specificity what bench conferences he did not attend or how he was prejudiced by his non-attendance. Nowhere under ground seven does Defendant allege that he was not allowed to participate in a bench conference involving jury selection. This claim is denied.

Dkt. 22, Ex. 9 at 4-5.  The record supports the trial court's findings.

It is settled Florida law that a defendant does not have a constitutional right to be present at bench conferences which involve purely legal matters. *See Hardwick v. Dugger,* 648 So.2d 100 (Fla.1994);[11] *see also* Florida Criminal Rule of Procedure 3.180(a). Florida law is consistent with the Supreme Court's decision in *Kentucky v. Stincer*, 482 U.S. 730,

---

[11]On April 27, 1995, the Florida Supreme Court entered its decision in *Coney v. State*, holding that under the then-current rules governing criminal proceedings in Florida, the defendant had a right to be present at the bench when pretrial juror challenges were exercised. 653 So.2d 1009, 1013 (Fla. 1995). Petitioner cites *Coney* in support of his claim that trial counsel was ineffective for failing to insure that he was present at bench conferences (Dkt. 2 at 11). Superseded by statute, *see Amendments to Florida Rules of Criminal Procedure,* 685 So.2d 1253, 1254 n.2 (Fla. 1996), *Coney* only applies to cases in which jury selection took place after April 27, 1995, and before January 1, 1997.   Because Petitioner's trial commenced on January 21, 1997, *Coney* is not applicable to his case. *See Wike v. State*, 813 So.2d 12, 21 (Fla. 2002).

745 (1987) (finding that a defendant has a right to attend any critical proceedings where his presence would contribute to the fairness of the procedure).

In his Rule 3.850 motion, Petitioner failed to identify <u>any</u> bench conference from which he was excluded, much less one where his presence would have been useful in ensuring a more reliable determination of any of the matters at issue in his trial. Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. *See Holland v. Jackson*, 542 U.S. 649, ___, 124 S.Ct. 2736, 2737-2738 (2004) (citing *Yarborough v. Gentry*, 540 U.S. 1 (2003)) (per curiam) (denying relief where the state court's application of federal law was supported by the record); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (the reasonableness of the state court's factual finding is assessed "in light of the record before the court"); *cf. Bell v. Cone*, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to the state court in determining whether its decision was contrary to federal law).

Given Petitioner's failure to identify with specificity any proceedings during his trial at which his presence would have been useful in ensuring a more reliable determination of matters at issue in his trial, *see Stincer*, 482 U.S. at 747, the trial court's resolution of this question cannot be said to be "objectively unreasonable." Further, the Court concludes that Petitioner has shown no deficient performance on the part of trial counsel in this regard. This claim lacks merit.

**Ground Thirteen**

As his next claim, Petitioner asserts that trial counsel was ineffective in failing to request a jury instruction on a permissive lesser-included offense of delivery of cocaine. As Respondent points out, albeit unsuccessful, trial counsel did request an instruction on the lesser-included offense of delivery of cocaine (Dkt. 22, Ex. 25, Vol. IV at Tr. 371-74). The

prosecutor argued, and the trial court agreed, that because the facts adduced at trial established that the quantity of cocaine that changed hands was greater than 28 grams, the evidence did not support a jury instruction consistent with the lesser-included offense of delivery of cocaine. Trial counsel's performance is not deficient merely because the argument he presents proves unsuccessful. *See Chandler v. United States*, 218 F3d 1305, 1314 (11th Cir. 2000), *cert. denied*, 531 US 1204 (2001).

The trial court's rejection of this claim is consistent with the holding in *Strickland*. Thus, Petitioner is not entitled to habeas relief on Ground Thirteen.

**Ground Fourteen**

Next, Petitioner alleges trial counsel was ineffective in failing to request a jury instruction for attempting to traffic in cocaine. Applying Florida law, the trial court denied trial counsel's request for an instruction on the lesser included offense of attempting to traffic in cocaine because the only evidence in the case proved a "completed offense." Pursuant to Fla. R. Crim. P. 3.510(a), no attempt instruction was authorized. *Wilson v. State*, 635 So.2d 16, 17 (Fla. 1994); *see also Campana v. State*, 765 So.2d 58 (Fla. 4th DCA 2000). The record confirms that in the present case, the evidence adduced at trial was consistent with a completed offense. Accordingly, Petitioner was not prejudiced by trial counsel's decision not to seek an attempt instruction.

The trial court's rejection of this claim is consistent with the holding in *Strickland*. Accordingly, this claim will be denied.

**Ground Fifteen**

In Ground Fifteen, Petitioner faults trial counsel for failing to make a timely objection or otherwise attempt to alert the trial court that its jury instruction on reasonable doubt was "unconstitutional and unfairly defective (Dkt. 2 at 13). In its order finding this claim facially

insufficient, the trial court noted that Petitioner failed to allege with any specificity why the jury instruction is unconstitutional. Petitioner did not cure this deficiency on appeal. Instead, Petitioner attempted to shift the burden of proof to the trial court, asserting that "it is the [trial] court's responsibility to attach portions of the record that refute [Petitioner's] allegations" (Dkt. 22, Ex. 14 at 12).

Likewise, Petitioner has done nothing to cure the deficiency in this claim in his § 2254 petition. As in his Rule 3.850 proceedings, devoid of any factual support, Petitioner's allegation that Florida's jury instruction on reasonable doubt is unconstitutional is insufficient to obtain relief from his conviction. See *Tejada v. Dugger,* 941 F.2d at 1559; *Hannon v. State*, 2006 WL 2507438 at *19.

The Court determines that this claim lacks merit.

**Ground Sixteen**

Petitioner alleges in Ground Sixteen that trial counsel was ineffective in failing to make a timely objection when the trial court requested that the bailiff ask the jurors if they wanted to finish the trial that night or recess until the following morning. Petitioner contends that the trial court committed reversible error by allowing the bailiff to "have a private talk with the jury outside the presence of the court, attorneys and especially the defendant" (Dkt. 2 at 14). The trial court summarily denied this claim, stating:

> The record is clear that the bailiff was acting in response to the Court's request. The Court was in the process of reviewing jury instructions with the attorneys prior to closing arguments. See Exhibit C: Excerpts from Trial (T 372-374). There are no allegations that any legal matters were discussed and there is no indication by Defendant how he was prejudiced by this communication. The trial was not yet concluded and the jury wasn't even at the point of deliberation. This claim is denied.

Dkt. 22, Ex. 9 at 6. The record supports the trial court's rejection of this claim.

Bailiffs have long been recognized as care givers for the jurors. As the Florida Supreme Court pointed out in *Nicholson v. State*: "[t]he term 'bailiff' signifies a 'keeper or protector,' . . . . The term 'bailiff' is applied to him because of the special duty of guarding or protecting juries during their deliberations from improper communications or intrusions." *Nicholson v. State*, 20 So. 818, 819 (Fla. 1896).

Petitioner's reliance on *Johnson v. Wainwright* in support of his assertion that the bailiff's communication with the jury requires reversal of his conviction is misplaced. 778 F.2d 623 (11th Cir. 1985). The *Johnson* court addressed a situation in which the county sheriff both acted as bailiff and assisted the prosecution by investigating the crimes and aiding the prosecutor during jury selection, opining that "[b]ecause a bailiff's exercise of his official duties is likely to give him added legitimacy in the eyes of a jury any participation he may have in the prosecution of the case carries at least the potential for prejudice." *Id.* at 627.

Here, Petitioner does not assert, much less demonstrate, that the bailiff had any roll inside the courtroom other than attending to the needs of the trial court and the jurors. Moreover, as the *Johnson* court held, where, as here, the bailiff's communication with the jury is of such a limited nature, to be entitled to habeas relief the petition must show actual prejudice -- a "speculative possibility" that his  role as "servant to the court" and care giver for the jury influenced the jury's deliberations is not enough to satisfy this burden. *Id.*

Because there was no basis for an objection when the bailiff spoke with the jurors, trial counsel's failure to object cannot be considered deficient performance. Thus, Petitioner has not demonstrated that the trial court's adjudication of this claim is contrary to or an unreasonable application of the *Strickland* test. This claim will, therefore, be denied.

**Ground Seventeen**

Petitioner next asserts that trial counsel was ineffective in failing to object when the trial court stopped his cross-examination of a state witness by asking if the witness could be excused. In its order summarily denying relief, the trial court noted that in his original Rule 3.850 motion, Petitioner alleged that the witness being questioned was Detective Squitieri, but in the amended Rule 3.850 motion, Petitioner alleged that the witness being questioned was Kenneth Mleczko. After concluding from a review of the trial transcript that Petitioner was referring to trial counsel's re-cross-examination of Mleczko on page 119,[12] the trial court summarily denied this ground, stating:

> A close reading of the transcript indicates that counsel was finished questioning the witness and there is no indication that the Court interrupted this process. The re-cross-examination may have been too brief for Defendant's liking, but counsel was clearly trying to make a quick point. Defendant may be confused because there is no transitional period in the transcript from the time counsel finishes his questions to the time the Court asks if the witness can be excused. This claim is denied.

Dkt. 22, Ex. 9 at 6.  Based on its own review of the transcript, this Court concludes that the trial court's findings accurately reflect the record.  Nothing in the record indicates that the trial court interfered in any way with trial counsel's questioning of Mleczko. The trial court's

---

[12]Taken in context, Petitioner complains of the following exchange during re-cross-examination:

| | |
|---|---|
| Trial counsel: | Mr. Mleczko, do you have any other suppliers? |
| Mleczko: | In cocaine? |
| Trial counsel: | Yes. |
| Mleczko: | No, I don't.  He's the only one. |
| Trial counsel: | He's the only one? |
| Mleczko: | Yes. |
| Trial counsel: | In all of Pinellas County? |
| Mleczko: | Yes. |
| Court: | All right.  Can this witness be excused? |
| Prosecutor: | Yes, Judge. |

Dkt. 22, Ex. 25, Vol. 1 at Tr. 119.

rejection of this claim is entirely consistent with the holding in *Strickland*.  Petitioner's claim will, therefore, be denied.

**Ground Eighteen**

In Ground Eighteen, Petitioner contends that trial counsel was ineffective in failing to request that the jurors be removed from the courtroom while the trial court heard argument on trial counsel's in support of a motion for judgment of acquittal. Contending that the jurors "listen[ed] to all the issues being discussed" during the bench conference, including the trial court's finding that the State had adduced sufficient evidence for the case to go to the jury, Petitioner asserts that the jurors "had the opportunity to hear[] the motion, and that may have created to the juries a wrong opinion about [Petitioner's] case."

Finding that there is no indication in the record that the jury heard the trial court's ruling on the judgment of acquittal, the trial court rejected this claim. Having likewise undertaken a review of the trial transcript, this Court agrees with the trial court.

In federal habeas courts, the burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that trial counsel's performance was unreasonable. *See Strickland*, 466 U.S. at 687. The petitioner must establish that particular and identified acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Id.* at 690.  Petitioner has failed to carry this burden. Having failed to satisfy either prong of the *Strickland* test, Petitioner has not demonstrated that he is entitled to relief under § 2254.

**Ground Nineteen**:

Petitioner next claims trial counsel was ineffective in failing to object when the State impermissibly bolstered the credibility of the detectives during closing arguments, *see* Dkt.

22, Ex. 25, Vol. IV at Tr. 376-423. In his petition, Petitioner cites the prosecutor's argument,

taken in context:[13]

> Prosecutor:   And you have to believe, as Mr. Castro said, somebody is lying.  You have to believe that Detective Squitieri got up there and told one big whopper lie when he says after Mleczko has cooperated we had him call [Petitioner] to say, come get your money for the dope. Because that is why the police were sitting on Mleczko's house, they were waiting for [Petitioner].

*Id.* at 421.

> Prosecutor:   And I ask you to consider that.  And talk about that title and how is it possible.  And to believe his statement [Petitioner] you got find that Squitieri lied when he says he's listening to Mleczko telephone him on the phone come get your money for your dope.  That's when he said he got the call.

*Id.* at 423. Having heard testimony on this claim during the evidentiary hearing, the trial

court addressed the claim as follows:

> Mr. Castro testified he was not sure why he did not object to the statements made during closing arguments. Further, he testified it is "the exception not the rule" to object during opening and closing statements, but he has objected during statements in the past when blatant misconduct occurs. In Mr. Castro's professional judgment, the issue did not center on the credibility of the officers, but focused more on the chain of custody. Counsel made a tactical decision not to object to the statements because the officer's credibility was not an issue.

> The law in Florida states that in order for a prosecutor's comments to merit a new trial, the comments must: (1) deprive Defendant of a fair and impartial trial; (2) materially contribute to his conviction; (3) fundamentally tainted to require a new trial; and (4) be so inflammatory to cause the jury to reach a more severe verdict than they would have reached otherwise. *See Buckner v. State*, 689 So.2d 1202 (Fla. 3d DCA 1997).

---

[13]These comments were not cited by Petitioner in his Rule 3.850 motion.  Instead, Petitioner complained about the following comments by the prosecutor: "'Why would Detective Viera lie about this' (T. 416), 'Why would Detective Viera make this up' (T. 417). 'Viera, what has he got to gain. Tell me what he has to gain from a half kilo deal when he's been involved in 500 kilo cases.  What in the world would he gain out of that.  What would Squinteri [sic] gain out of this.  These guys are experienced officers.  Would they throw it all away to get Sergio?' (T. 417)."  The Court concludes that this shift in focus from argument regarding Detective Viera to argument regarding Detective Squitieri is of no consequence to the outcome of these proceedings.

The Court has reviewed closing arguments presented by both parties, paying particular attention to the comments Defendant alleges were improper and constituted error under Florida law. [*See* Exhibit 1.] When viewed in context, the Court finds the prosecutor's statements do not rise to the level of improper conduct. These statements did not amount to improper bolstering or vouching for the officer's credibility. *See Reyes v. State*, 700 So.2d 458 (Fla. 4th DCA 1997). In light of the entire closing arguments and the amount of evidence presented against Defendant, the Court finds the statements did not deprive Defendant of a fair and impartial trial, materially contribute to his conviction, fundamentally taint his trial to require a new trial nor were the comments so inflammatory that they caused the jury to reach a more severe verdict than they would have reached otherwise. The Court finds Defendant has not shown that counsel's performance was deficient for failing to object nor has Defendant proven that he suffered prejudice.  This claim is denied.

Dkt. 22, Ex. 13 at 3-4.

Closing argument is intended to "assist the jury in analyzing, evaluating and applying the evidence."  *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984).  Thus, the prosecutor is not limited to a bare recitation of the facts; he may "comment" on the evidence, *id.*, and may "state his contention as to the conclusions the jury should draw from the evidence." *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984).

First, because Petitioner testified at trial, the prosecutor was entitled to comment on the reasonableness or unreasonableness of his statements and any discrepancies in his testimony. *See Portuondo v. Agard*, 529 U.S. 61, 62 (2000); *Chandler v. State,* 848 So.2d 1031, 1044 (Fla. 2003) (citation omitted). Second, as in federal court, it is not improper in Florida courts for a prosecutor to comment on the evidence. Improper vouching only occurs when the State "places the prestige of the government behind the witness and indicates that information not presented to the jury supports the witness's testimony." *Hutchinson v. State*, 822 So.2d 943, 953 (Fla. 2004). *See also United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991) (citations omitted). Here, because trial counsel challenged the credibility of Detectives Viera and Squitieri during closing argument, it was entirely proper

for the prosecutor to meet that challenge during his rebuttal. Dkt. 22, Ex. 25, Vol. IV at Tr. 388-89; 390-93. The prosecutor reiterated trial counsel's admonition to the jury that someone was obviously lying, then asked the jury to consider the testimony and evidence adduced during the trial and ask themselves what possible motive Detectives Viera and Squitieri could have to lie about Petitioner's involvement in the drug transactions.

In context, the prosecutor's remarks were invited by trial counsel's attack on the credibility Detectives Viera and Squitieri. Based on notions of fundamental fairness, the doctrine of invited response allows the state to comment on the issues raised by the defendant. *State v. Mathis*, 278 So.2d 280, 281 (Fla. 1973) ("Here the challenged remark in closing argument of the prosecutor falls into the category of . . . an 'invited response' by the preceding argument of defense counsel regarding the same subject."); *State v. Compo*, 651 So.2d 127, 130 (Fla. 2d DCA 1995) ("Fundamental notions of fairness required that the state be allowed to comment on the . . . issues raised by the defendant.") (citation omitted).

As the Eleventh Circuit explained in *United States v. Hernandez*:

The prosecutor may not vouch for witnesses but may still "argue that the fair inference from the facts presented is that a witness had no reason to lie." The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case; rather, it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury.

921 F.2d at 1573 (citations omitted). *See also United States v. Diaz*, 190 F3d. 1247, 1268 (11th Cir. 1999).

Counsel is not ineffective for failing to interpose an objection for which there is no basis. Finally, Petitioner has not demonstrated "a reasonable probability that, but for [trial counsel's failure to object to the prosecutor's comments], the result of the proceeding would have been different." *Id.* at 694.

The Court concludes that Petitioner has failed to establish that the trial court's rejection of this claim is contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts.  *See* 28 U.S.C. § 2254(d).

**Grounds Twenty and Twenty-one**

In these two grounds, Petitioner asserts that trial counsel was ineffective in failing to properly impeach three State witnesses. In Ground Twenty, Petitioner alleges trial counsel should have used testimony presented during the trial to impeach the testimony of Detectives Squitieri and Viera. Petitioner argues, for example, that trial counsel should have used the following contradiction in testimony for impeachment purposes: "Squitieri claimed that on April 5th [sic] day was 'rainy, wet, thunder, soggy day.' (Tr. 70). While Viera claimed it was a 'colder day, it wasn't raining.' (Tr. 165)."  *See* Dkt. 2 at 17.

Likewise, in Ground Twenty-one, Petitioner asserts that trial counsel was ineffective in failing to impeach Mleczko with testimony given by Detective Viera, defense witness Bob Corona, and Petitioner.   Here, Petitioner contends, *inter alia*, that trial counsel was ineffective in failing to impeach Mleczko with the following testimony: "Mleczko told the trial jury that he knew [Petitioner] since 1990. (Tr. 87), but on cross-exam [sic] Mleczko claimed he met the defendant through his purchasing of drug[s] from Bob Corona.  Corona testified that he met the defendant in 1992."  *See* Dkt. 2 at 18.

The trial court denied these claims without a hearing.  A review of the record confirms that each of the inconsistencies that Petitioner asserts trial counsel was ineffective in failing to use to impeach one or more of these witnesses was presented to the jury through testimony at trial. As the trial court noted in its order denying Petitioner's Rule 3.850 motion, "[t]he jury was certainly present to hear when one officer's testimony contradicted that of another officer. In fact, it is one of the duties of the jury to evaluate the

consistency of the evidence. Defendant does not allege that a witness testified differently than they did in a prior sworn statement." (Dkt. 22, Ex. 11 at 5).  The trial court made a similar finding in rejecting Petitioner's assertion that trial counsel failed to properly impeach Mleczko.

Petitioner had a constitutional right to a trial by jury.  In our judicial system, it is the jury that decides disputed issues of fact based on the testimony and exhibits admitted into the record. Thus, the outcome of a case depends largely on the witnesses' credibility. Questions regarding the credibility of a witness and the weight to give his/her testimony are left for the jurors to resolve during their deliberations. Here, trial counsel properly refreshed the jurors' memories by bringing contradictions in the testimony of the witnesses to the juror's attention during closing argument.

Petitioner's reliance on *Smith v. Wainwright* to support his claim is unavailing.  741 F.2d 1248 (11th Cir. 1984).  In *Smith*, the court held that the petitioner was entitled to an evidentiary hearing on a claim of ineffective assistance of counsel for failure to use *the witness's* prior conflicting statements as impeachment when the witness testified at trial. Here, Petitioner does not point to any inconsistency between these witnesses' in-court testimony and statements they made out of court.

The Court concludes that the trial court's rejection of these claims cannot be said to be inconsistent with the holding in *Strickland*.  These claims lacks merit.

**Ground Twenty-two**

In the next ground. Petitioner complains that trial counsel was ineffective for admitting Petitioner's guilt during opening statements and closing arguments, without Petitioner's consent. Petitioner fails to cite any portion of trial counsel's opening statement as objectionable.  *See, e.g.*, Dkt. 22, Ex. 25, Vol. I at Tr. 23.  The crux of Petitioner's

complaint appears to be the following comment made by trial counsel during closing argument, "He had a drug habit. . . . He need[ed] to support his habit through illegal drug deals or trading off drugs, money owed to him for other drugs" (Dkt. 22, Ex. 25, Vol. III at Tr. 398).

Having heard testimony on this issue during the evidentiary hearing, the trial court rejected this claim, finding as follows:

> Counsel testified at the evidentiary hearing that he discussed with Defendant, on numerous occasions, the trial strategy to portray a buyer/seller relationship and that Defendant was a small time use, but not a trafficker. Defendant admits he discussed his drug use with Mr. Castro, but he denies they ever discussed using that information as a trial strategy.
>
> The record reveals that counsel never conceded his client was guilty of trafficking (the charged offense). Also, Mr. Castro testified that Defendant never advised him not to mention his drug use at trial nor did Defendant voice any objection after the opening statements.
>
> In *Atwater v. State*, 788 So.2d 223 (Fla. 2001), the Florida Supreme Court held that counsel's concession that defendant was guilty of lesser-included offense did not constitute *per se* ineffective assistance of counsel. Rather, the trial court needed to apply the Strickland test to evaluate whether or not counsel was ineffective. See id. *See also Smallwood v. State*, 809 So.2d 56, 58 (Fla. 5th DCA 2002).
>
> The Court finds that testimony of Mr. Castro to be credible concerning the fact that he met with Defendant on several occasions to discuss this trial strategy. It is reasonable that Defendant did discuss his drug use with his attorney and the attorney used his professional judgment to craft a trial strategy that utilized this information to Defendant's advantage. Counsel portrayed Defendant as a working class man, with a drug habit, but counsel argued Defendant did not live the life of a drug dealer. However, counsel did argue that another man was [the] main drug dealer and that his client was a buyer from that person.
>
> At no point did counsel did [sic] concede Defendant's guilt to the offenses charged or to any lesser-included offenses. [*See* Exhibit 1.] Counsel did use Defendant's drug habit to establish a buyer/seller relationship. The Court finds that counsel's performance was within reasonable, professional standards in presenting the trial strategy and that, in fact, counsel and Defendant had discussed this strategy. Defendant has not proven that counsel's performance was deficient and this claim is denied.

Dkt. 22, Ex. 13 at 4-5.

As the trial court found, trial counsel did not admit Petitioner's guilt to any of the charged offenses. Moreover, given Petitioner's own testimony, he cannot demonstrate that he was prejudiced by trial counsel's comments regarding his drug habit. Petitioner testified that he did "drugs socially or for personal use" with Ken Mleczko (Dkt. 22, Ex. 25, Vol. III at Tr. 303-04). According to Petitioner, "[w]hen [Mleczko] had drugs, he would invite [Petitioner], whether it was at his place of work or at the auction or [Petitioner] bought some drugs for his own personal use" from Mleczko. *Id.* at Tr. 304. According to Petitioner, sometime between February 17 and April 5, 1995, he bought an "eight ball" of cocaine from Mleczko. *Id.* at Tr. 307. When asked if he had a drug habit, Petitioner responded, "Yes. Yes, I like the drugs." *Id.* at Tr. 307-08. Petitioner further testified that on the day he was arrested he spoke with Mleczko, who said that he would have some cocaine delivered later in the day. Mleczko asked Petitioner if he wanted any of the cocaine. *Id.* at Tr. 308. According to Petitioner, he told Mleczko to contact him when the cocaine arrived.

Later in the day, Mleczko called and invited Petitioner to his house. When Petitioner arrived there, he was given "two eight balls, about six grams" of cocaine by Mleczko. *Id.* at Tr. 312. Petitioner did not have the money to pay Mleczko when he received the cocaine, but he returned later in the day with his payment. *Id.*

Petitioner further testified that after his arrest, he became afraid that the detectives were going to search his house and find the cocaine he had hidden there, so he concocted a story that he had a drug connection in Miami. Petitioner told the detectives that the Miami supplier was scheduled to call him at his home, hoping to give the detectives a reason to take him to the house. According to Petitioner, he made up this story because he wanted an opportunity to get inside his house and dispose of the cocaine before the detectives

searched it. *Id.* at Tr. 323.  According to Petitioner, when the detectives took him to the house, he went into the bathroom and "got rid of four or five grams of cocaine" he had hidden there.  *Id.*

Petitioner's claim that trial counsel was ineffective for admitting that he had a drug habit and had previously sold drugs to obtain money to support his habit is foreclosed by the United States Supreme Court's decision in *Florida v. Nixon* holding that:

> When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest . . . counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent. Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter;  no tenable claim of ineffective assistance would remain.

*Florida v. Nixon*, 543 U.S. 175, 125 S.Ct. 551, 563 (Dec. 13, 2004).  In the instant case, the trial court found that Petitioner did discuss the strategy of using Petitioner's drug habit to establish a buyer/seller relationship as a defense to the drug trafficking charges. State court factual findings are subject to a presumption of correctness under 28 U.S.C. § 2254(e)(1) and must be accepted by the federal courts on habeas review, unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, a burden that Petitioner has failed to carry. *See* § 2254(e)(1).

The trial courts' finding in this regard is supported by the record. The Court determines that the trial court's disposition of this claim is entirely consistent with the holding in *Strickland.*

### Ground Twenty-three

In Ground Twenty-three, Petitioner contends that trial counsel should have objected when the prosecutor unfairly shifted the burden of proof during closing arguments. Specifically, Petitioner alleges that the prosecutor's discussion of the distinction between

a charge of possession of cocaine and a charge of trafficking in cocaine based on the quantity of the drug involved undermined Petitioner's request for the lesser-included offense of possession when the prosecutor instructed the jury that because each of the transactions about which they had heard testimony involved 28 grams or more of cocaine, if they found Petitioner possessed cocaine then he was guilty of trafficking in cocaine.

The trial court summarily denied this claim based on the record, noting that the prosecutor did not "shift" the burden of proof because he qualified his remarks regarding possession by informing the jury that the amount possessed must be 28 grams of cocaine or more. The transcript confirms the trial court's finding that the prosecutor's remarks merely outlined the elements of the crimes charged (Dkt. 22, Ex. 25, Vol. IV at Tr. 377-382). *See* Fla. Stat. §893.135(1)(a)-(b). The Court agrees with the trial court's analysis and findings of fact. Petitioner has presented no evidence to refute these findings, *see* 28 U.S.C. § 2254(e). The trial court's rejection of this claim is consistent with the holding in *Strickland*. This claim will, therefore, be denied.

**Ground Twenty-four**

Petitioner asserts that trial counsel was ineffective in failing to object when the trial court restricted the time trial counsel would have for his closing argument. As the trial court observed in rejecting this claim, a review of the transcript reveals that trial counsel requested time to prepare for closing and 30-45 minutes for argument.  He was allowed 30 minutes to collect his thoughts and prepare his closing, and 30 minutes for argument.  *See* Dkt. 22, Ex. 25, Vol. IV at Tr. 373-74.

Trial courts have broad discretion in controlling the scope of closing argument and should be guided by the function of the argument, i.e., to help the jury remember and interpret the evidence.  *See United States v. Sawyer*, 443 F.2d 712, 713 (D.C. Cir. 1971)

(citations omitted).   As in federal courts, in Florida courts, the length of time allotted to closing argument is ordinarily left to the sound discretion of the trial court. *See Daniel v. Rogers*, 72 So.2d 391 (1954); *Rodriquez v. State,* 472 So.2d 1294 (Fla. 5th DCA 1985). If the time allowed for closing is reasonable, permitting trial counsel an adequate opportunity to relate the factual argument to the governing principles of law, the trial court has not abused its discretion. *Id.*

Here, the trial court did not arbitrarily restrict trial counsel's time for closing.   While trial counsel received 15 minutes less argument time than he requested, he was given ample time to prepare for closing, and as the record demonstrates, trial counsel formulated and provided a strong closing argument. Petitioner has not demonstrated how he was prejudiced by the time limitation imposed by the trial court based on trial counsel's request for 30 to 45 minutes for closing.  Having failed to show either that there was an erroneous application of *Strickland* or that the trial court's application of the *Strickland* standard was objectively unreasonable, Petitioner has not established that he is entitled to habeas relief on this claim.

**Ground Twenty-five**

Next, Petitioner alleges that counsel was ineffective in failing to ensure his presence at the rendition of the verdict. Petitioner alleges he did not voluntarily absent himself and wanted to be present during the rendition of the verdict. He claims it was not until after the verdict was read that he was returned to the courtroom.   The trial court summarily denied this claim, finding that Petitioner was out on bond at the time of his trial and was free to attend the court proceeding.  The order denying relief states:

> By using the phrase, "was returned," Defendant implies that he was in custody during the proceedings. The record, however, indicates that Defendant was not being held at the time of his trial and had in fact been

bonded out since September 13, 1995. Exhibit D: Computer Printout. It was certainly within Defendant's power to be present at the rendition of the verdict. Additionally, Defendant fails to state how he was prejudiced. *See Henry v. State*, 114 So. 523 (1927).  This claim is denied.

Dkt. 22, Ex. 9 at 8.

The record supports the trial court's findings.  Under the rules governing criminal proceedings in Florida courts, "[i]f the defendant is present at the beginning of the trial and thereafter, during the progress of the trial or before the verdict of the jury has been returned into court, voluntarily absents himself or herself from the presence of the court without leave of court, . . . the trial of the cause or the return of the verdict of the jury in the case shall not thereby be postponed or delayed, but the trial, the submission of the case to the jury for verdict, and the return of the verdict thereon shall proceed in all respects as though the defendant were present in court at all times."  Fla. R. Crim. P. 3.180(c).

Petitioner left the courtroom when the jury began its deliberations.  The jury returned a verdict 45 minutes later.  Petitioner offers no explanation for his absence from the courtroom when the verdict was rendered, and under Florida's procedural rules, his presence was not required.  Trial counsel was, therefore, not ineffective in failing to ask to postpone the reading of the verdict until Petitioner reappeared.  The Court concludes that the trial court's resolution of this issue was not contrary to the teachings of *Strickland*.

**Ground Twenty-seven**

Petitioner contends that trial counsel was ineffective in failing to request a different interpreter when it was apparent that Petitioner was having difficulty communicating with the interpreter used at trial. The trial court denied this claim without a hearing, finding that the record reflects that one of the first things trial counsel said to Petitioner on direct examination was to caution him that he should tell trial counsel if he was having difficulty

understanding any of the questions or with the interpretation (Dkt. 22, Ex. 25, Vol. III at Tr. 296-97). Petitioner did not raise any concerns at the time.

In federal court, "the general standard for the adequate translation of trial proceedings requires continuous word for word translation of everything relating to the trial. . . ." *United States v. Joshi*, 896 F.2d 1303, 1309 (11th Cir. 1990). *See* Fed.R.Evid. 604, which implements Fed.R.Crim.P. 28. In Florida courts, when a defendant cannot "hear or understand the English language, or cannot express himself in English sufficiently to be understood," the trial court must appoint "an interpreter who is duly qualified to interpret for the witness." *See* Fla. Stat. § 90.606(3) (1996); *Kelley v. State*, 96 So. 348 (Fla. 1928) (discussion of the rules pertaining to the interpretation of testimony).  Although defendants have no constitutional "right" to flawless, word for word translations, *see United States v. Joshi*, 896 F.2d at 1309  ("occasional lapses" from word to word translation mode will not render trial "fundamentally unfair"), interpreters should nevertheless strive to translate exactly what is said.

Only if the defendant makes any difficulty with the interpreter known to trial counsel or the court can corrective measures be taken. As the trial court found during the suppression hearing, having lived in the United States for five years, Petitioner was conversationally bilingual (Dkt. 22, Ex. 1 at R.186). Yet, there is no indication that Petitioner made any objection to the sufficiency of the interpreter's translation of the questions or his responses thereto at trial. Moreover, while this claim would have been available to him at that time, Petitioner did not raise this issue on direct appeal.

Petitioner asserts that when he took the stand, he told the interpreter in Spanish to tell the trial court that he "needed the other interpreter" (Dkt. 2 at 25), but the interpreter failed to do so.  While the record reflects that Petitioner had the ability to do so, he did not

communicate his alleged concern regarding the interpreter's ability to translate accurately to either trial counsel or the trial court. If, as Petitioner asserts, "the interpreter had real problems in translating for [Petitioner] and . . . manipulated [Petitioner's] words" during his trial (Dkt. 2 at 25), Petitioner should have brought this to the trial court's attention during the trial. The accused must do his part to allow the constitutional and other protections to function effectively. *See Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989).

Petitioner has not rebutted the trial court's finding during the suppression hearing that he was conversationally bilingual. The record further reflects that Petitioner had more than a "marginal" understanding of English, as evidenced by testimony that the interrogation, which was recorded on tape, was conducted in English.

The lack of objection during trial weighs heavily against granting relief to Petitioner on this claim. See *Valladares v. United States*, 871 F.2d at 1566 ("To allow a defendant to remain silent throughout trial and then, upon being found guilty, to assert a claim of inadequate translation, would be an open invitation to abuse."). Moreover, there is no particularized showing that the allegedly deficient translation prejudiced Petitioner in any way. *See, e.g., United States v. Gomez*, 908 F.2d 809, 811 (11th Cir. 1990) (explaining how specific translating error resulted in prejudice to the defendant). The portions of the transcript to which Petitioner directs the Court's attention do not support finding that he is entitled to relief from his conviction under § 2254.

The Court concludes that the trial court's rejection of this claim is consistent with the holding in *Strickland*. This claim is, thus, subject to be denied.

**Ground Twenty-eight**

Finally, in Ground Twenty-eight, Petitioner alleges that trial counsel was ineffective in failing to object to improper comments made by the trial judge. Petitioner complains of

two comments the trial court judge made during the trial.  The first comment with which Petitioner takes issue occurred during the trial court judge's opening instruction to the jurors when he stated that: "The case must be tried by you only on the evidence that is presented here today in this courtroom in the presence of the Defendant and the attorneys" (Dkt. 22, Ex. 25, Vol. I at Tr. 16) . Petitioner contends that this instruction may have misled the jurors to believe that they were to decide the case on the evidence presented during the first day of trial, causing them to ignore testimony they heard when the trial recommenced on the second day. The trial court summarily rejected this argument, pointing out that Petitioner failed to take into account the trial judge's instruction to the jurors that they "should not form any definite or fixed opinion on the merits of the case until [they] heard all of the evidence, the arguments of the lawyers, and the instructions of the law by [him]" (Dkt. 22, Ex. 25, Vol. I at Tr. 15).

The second comment about which Petitioner complains, taken in context, was made by the trial court judge when the trial recommenced on the second day: "Gentlemen, sorry for the delay this morning, but I am not in control of my life right now, and it will probably be a few months if I am even then.   And unfortunately, we had a number of items scheduled this morning that probably should not have been scheduled and we had to get rid of them none the less [sic]." (Dkt. 22, Ex. 25, Vol. II at Tr. 141). Petitioner contends that this comment reflects the effects of having attended a funeral the night before on the trial court judge's state of mind. Petitioner alleges that when the trial court judge made this comment, trial counsel should have questioned the trial court judge's competence to go forward with the trial. Having reviewed the trial court judge's comment in context, this Court concludes that the comment was made in regard to the trial court's workload rather than an extra-judicial event.

When Petitioner presented this claim in his Rule 3.850 motion, the trial court rejected it, finding that Petitioner failed to cite any concrete examples of the trial court judge's alleged incompetence and or demonstrate how he was prejudiced by the comment.  In his reply to Respondent's argument that the trial court correctly decided this issue, Petitioner asserts that he is not required to "cite any concrete examples of incompetence . . . or allege how he was prejudiced" (Dkt. 26 at 24).  Petitioner is wrong. As discussed above, the *Strickland* test places the burden on the petitioner to establish that he is entitled to relief by establishing that a specific act by trial counsel was unreasonable under prevailing professional standards and that he suffered actual prejudice as a result of trial counsel's deficient performance.

A petitioner must support his allegations with at least a proffer of some credible supporting evidence. *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A habeas court is not required to entertain frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d at 1559; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir.1990). *See also Hannon v. State*, 2006 WL 2507438 at *19.

Having failed to demonstrate that there was a basis for questioning the trial court judge's competency, Petitioner has failed to meet either prong of the *Strickland* test.  The Court determines, therefore, that the trial court's denial of this claim was not an unreasonable application of *Strickland*.  This claim lacks merit.

**Conclusion**

For the foregoing reasons, the Court determines that Petitioner has not met the criteria for relief under 28 U.S.C. § 2254.

ACCORDINGLY, the Court **ORDERS** that:

1.   The petition for writ of habeas corpus is **DENIED** (Dkt. 1).

2.   The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on October 3, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
All Parties/Counsel of Record

SA:jsh

F:\Docs\2003\03-cv-856.dismissal 2254.wpd